IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 1, 2003 Session

# TOWN OF ROGERSVILLE, ex rel ROGERSVILLE WATER COMMISSION v. MID HAWKINS COUNTY UTILITY DISTRICT

**Direct Appeal from the Circuit Court for Hawkins County**
**No. 10741      Hon. John K. Wilson, Circuit Judge**

**FILED JUNE 2, 2003**

**No. E2002-01727-COA-R3-CV**

Petition to alter Respondent Utility's boundary was sustained by County Executive and Trial Court. On appeal, we vacate and remand with instructions.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Douglas T. Jenkins, Rogersville, Tennessee, for Appellant.

William E. Phillips, Rogersville, Tennessee, for Appellees.

Donald L. Scholes, Nashville, Tennessee, Amicus Curiae, for Tennessee Association of Utility Districts.

### OPINION

The Town of Rogersville, *ex rel* Rogersville Water Commission ("Town"), petitioned the County Executive to "modify the utility district boundaries of the mid-Hawkins County Utility District" ("MHUD") and "to assume operation and control within said area and to provide water utility services in said area". The area in MHUD's utility district, known as Stanley Valley, has approximately 160 families not having water presently supplied to their residences by MHUD, and this is the area sought to be carved out from the district by the town.

After hearing evidence, the County Executive held:

Without question, at least 160 families in Stanley Valley have exhausted almost every remedy in an effort to obtain service. The need is as evident as the desire, therefore, I must decide which utility district can and will provide this service.

The County Executive found that the town presented "uncontradicted evidence of the financial ability (through loans, bonds or available funds)" to immediately begin construction to provide the service, and he found that "a time schedule for the beginning and completion [of such service] was not provided by MHUD and only a tentative intent to serve the area and if funds were available".

The County Executive ordered:

that the area described in the Petitioner's Petition is awarded to Rogersville Water Commission, and that the Petition to Modify is sustained and that the utility district lines shall be redrawn as requested by Petition . . . .

The County Executive purported to act under the authority of Tenn. Code Ann. § 7-82-202(b). MHUD has appealed, insisting that the County Executive acted contrary to law.

The County Executive's action is appealable to the Circuit Court, as the action of an administrative body is subject to the procedures contained in the Uniform Administrative Procedures Act. *Pace v. Garbage Disposal Dist. of Washington County,* 390 S.W.2d 461 (Tenn. Ct. App. 1965). The UAPA specifies that the standard of review of such actions is "substantial and material evidence." Tenn. Code Ann. § 4-5-322(h).[1]

The Town and the County Executive cite Tenn. Code Ann. § 7-82-201 as authority for proceedings to modify a utility district, but this application is misplaced. The statute by its terms addresses only the creation of a utility district and the proceedings thereto. Tenn. Code Ann. § 7-82-202(b) does not authorize a county executive to modify or change the existing boundaries of an existing utility district. Indeed, the factors set forth in the statute are factors to be used in determining whether the public convenience and necessity requires the original creation of a utility district. *Consolidated Gray-Fordtown-Colonial Heights Util. Dist. Of Washington & Sullivan Counties, Tennessee. v. O'Neill,* 209 Tenn. 342, 354 S.W.2d 63 (Tenn. 1963). The County Executive erroneously used the factors set forth in Tenn. Code Ann. § 7-82-202(b) to determine that the district boundaries should be modified, and his order modifying the utility district's boundaries is vacated in that he acted "in excess of the statutory authority of the agency". Tenn. Code Ann. § 4-5-322(h)(2). Only the General Assembly can change the boundaries of a utility district which has been created under the Utility District Law. Tenn. Code Ann. § 7-82-101 *et seq.*

---

[1]Tenn. Code Ann. § 4-5-322(h) provides that agency decisions are reversed or modified upon review only if its findings, inferences, conclusions or decisions are:

"(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;

(3) made upon unlawful procedure;

(4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) unsupported by evidence which is both substantial and material in light of the entire record."

Since the parties stipulated that the mentioned residents in the utility district have a need for a reliable potable water source, these residents have standing to maintain this action, and the statutory authority for seeking relief in an existing district is Tenn. Code Ann. § 7-82-301(a), which requires the county executive to find that the public convenience or necessity requires additional or other services:

> From and after the making and filing of such order of incorporation, the district so incorporated shall be a "municipality" or public corporation in perpetuity. . . . So long as the district continues to furnish any of the services which it is herein authorized to furnish, it shall be the sole public corporation empowered to furnish such services in the district, and no other person, firm or corporation shall furnish or attempt to furnish any of the services in the area embraced by the district, unless and until it has been established that *the public convenience and necessity requires other or additional services; . . .*

Tenn. Code Ann. § 7-82-301(a)(1). (Emphasis supplied).

Where a utility district holds an exclusive franchise to construct and operate a public water system pursuant to §301(a), the procedure to modify the franchise is a petition to the county executive of the county which originally incorporated the utility district. *West Wilson Utility District of Wilson County v. Atkins,* 442 S.W.2d 612 (Tenn. 1969); *City of Crossville v. Middle Tenn. Util. Dist.,* 345 S.W.2d 865 (Tenn. 1962). Moreover, the *sole* remedy available to parties dissatisfied with a utility's service is to modify a utility district's exclusive franchise. *Id.; Chandler Inv. Co. v. Whitehaven Dist.,* 311 S.W.2d 603 (Tenn. Ct. App. 1957). As the Supreme Court explained in *Consolidated Gray-Fordtown-Colonial Heights Util. Dist. V. O'Neill:*

> [T]hey have the right to petition the County Court if the services are not being rendered and to show this to the county Court, then the County Court has the right to take such action as it deems necessary under the facts. Of course, the County Court in doing so will take into consideration all the facts and determine whether or not the district has been, or is, making a reasonable effort under the circumstances to furnish the citizens of the complaining districts with the utilities this utility district is allowed to furnish under the Acts, in question.

Tenn. Code Ann. § 7-82-301(a) provides that the county court must find that "public convenience and necessity requires other or additional services[.]" It does not say that the public convenience and necessity results in re-drawing the boundaries of the district. *See also, Tenn. Atty. Gen. Op.,* 2002 WL 31398958 (October 7, 2002). It is clear that no court can reduce or increase the territory of a utility district; where the Legislature has fixed the boundaries of a utility district. The County Executive and Circuit Court erred in ordering that the parties' respective boundaries be redrawn.

In *Pace v. Garbage Disposal District of Washington County,* 54 Tenn. App. 263, 390 S.W.2d 461 (Tenn. Ct. App. 1965), this Court said:

> Although not spelled out in the Act, we think it is also to be borne in mind that the

predominant consideration in cases of this kind is the need of the people to be served by the utility over the entire territory embraced by the District rather than the desires of the contending parties.[2]

As we have noted, the need was stipulated, and upon remand to the County Executive, the County Executive is directed to determine whether the utility district refuses or is not able to provide the utility service in the area of Stanley Valley. Once either factual determination has been made, the County Executive is empowered under 7-82-301(a) to find that "public convenience and necessity requires other and additional services."

MHUD also argues that the County Executive impermissibly "trumped" federal law in his holding. 7 U.S.C. § 1926(b) provides that rural water associations receiving federal funds are protected from encroachment by surrounding municipalities:

> The service by or made available through any such association shall not be curtailed or limited by the inclusion of the area within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of said loan; nor shall the happening of such event be the basis of requiring such association to secure any franchise, license or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

The purpose of the this statute is two-fold: to encourage rural water development by expanding the number of potential users, resulting in a lower cost per user; and to safeguard the viability and financial security of associations and of FmHA [now USDA Rural Development] loans, and to protect both from the expansion of nearby towns and cities. *Scioto County Reg. Water Dist. v. Scioto Water, Inc.,* 103 F.3d 38 (6th Cir. 1994); *City of Madison, Miss. v. Bear Creek Water Ass'n, Inc.,* 816 F.2d 1057 (5th Cir. 1987), *citing,* S. Rep. No. 566, 87th Cong., 1st Sess., *reprinted in* 1961 U.S. Code Cong. & Admin. News 2243, 2309.

Doubts regarding whether a water association is entitled to protection from competition under this statute should be resolved in favor of the party receiving federal monies. *Wayne v. Village of Sebring*, 36 F.3d 51, 528 (6th Cir. 1994).

Section 1926(b) is invoked whenever three criteria are met: (1) the entity seeking protection is a rural water association within the meaning of the Act; (2) the rural water association has a FmHA (now RECDS) loan obligation; and (3) the rural water association provides or makes service available to the geographical area in question. *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky,* 93 F.3d 230, 234 (6th Cir. 1996). Elements (1) and (2) are not disputed in this appeal.

---

[2]The County Executive in arriving at his decisions, essentially did a comparative analysis between the parties as to who could best serve the area. This was not appropriate. *Chandler Inv. Co. v. Whitehaven Util. Dist.,* 44 Tenn. App. 1, 311 S.W.2d 603 (1957).

The Sixth Circuit Court of Appeals noted that a "key factor" in determining whether water service had been made available was the proximity of the water district's distribution lines to the areas in dispute, as well as whether service was actually and actively being provided by the water district. The Court reviewed the decisions of other circuits addressing the issue and adopted what has come to be known as the "pipes in the ground" or "physical ability test:"

> . . .[W]hether an association has made service available is determined based on the existence of facilities on, or in the proximity of, the location to be served. If an association does not already have service in existence, water lines must either be within or adjacent to the property claimed to be protected by Section 1926(b) prior to the time an allegedly encroaching association begins providing service in order to be eligible for Section 1926(b) protection.

*Lexington-South,* 93 F.3d at 237. The cases demonstrate that integral to the concept of making service available is the *capability* of providing service, or, at a minimum, of providing the service *within a reasonable time. Bell Arthur,* 173 F.3d at 526. Timeliness and capability are also important components of the "pipes in the ground" standard. Of course the reasonableness of timeliness, adequacy of water service to be provided, capability, and whether a district requires a greater level of water service than the utility can meet, are all questions of fact within the exclusive province of the state and local regulatory agencies. *North Shelby Water Co., v. Shelby Util. Municipal Water and Sewer Comm.,* 803 F.Supp. 15 L.Ed. (Ky. 1992)..

The federal statute protects the utility from encroachment so long as all the criteria are met. If a determination by the appropriate authority is made that the public convenience and necessity requires other or additional services, such a finding would of course negate the third criteria set forth in *Lexington-South Elkhorn Water Dist.*

For the foregoing reasons, the Judgment of the Circuit Court and the findings of the County Executive are vacated and the cause is remanded to the County Executive for further proceedings consistent with this Opinion.

The costs of the appeal are assessed to the Town of Rogersville, ex rel Rogersville Water Commission.

_____
HERSCHEL PICKENS FRANKS, J.