IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 18, 2012

# JIM HAMMOND, SHERIFF OF HAMILTON COUNTY ET AL. v. CHRIS HARVEY ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 11-0215      W. Frank Brown, III, Chancellor**

**No. E2011-01700-COA-R3-CV - Filed February 29, 2012**

Six sergeants (collectively "the Sergeants") employed by Jim Hammond, the Sheriff of Hamilton County ("the Sheriff"), filed a grievance with the Hamilton County Sheriff's Office Civil Service Board ("the Board") complaining that there is an unlawful disparity in pay among the 19 sergeants on the force. The Board found a disparity and ordered the Sheriff "to equalize their pay and if all [s]ergeants do the same job that they should be paid the same if there is no written criteria to establish standards." The Sheriff appealed[1] to the trial court by petition for a writ of certiorari. The court (1) held that the Board was without authority to order the Sheriff to equalize the pay of the 19 sergeants and (2) declared the Board's decision "null and void." The Sergeants appeal. We modify the trial court's judgment and remand to the Board with instructions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Modified; Case Remanded with Instructions**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Harold L. North, Jr., and Tom Greenholtz, Chattanooga, Tennessee, for the appellants, Chris Harvey, Ricky Jones, Mark King, Mark Kimsey, Mark Williams and Jody Mays.

R. Dee Hobbs, Chattanooga, Tennessee, for the appellees, Jim Hammond, Sheriff of Hamilton County, and Hamilton County, Tennessee.

---

[1]Hamilton County joined in the Sheriff's petition because the County would be responsible for funding any pay increases. The County is also a party to this appeal. For the sake of brevity and simplicity, we have limited our discussion of the parties to the Sheriff and the Sergeants.

# OPINION

## I.

There is little rhyme or reason to the pay scale of the individuals holding the rank of sergeant in the Hamilton County Sheriff's Office. Don Gorman, director of administration for the Sheriff, admitted that there "[a]bsolutely" is "a pay disparity among the class of sergeants." All corporals in the Sheriff's Office make the same amount. The same is true of those holding the rank of captain. The salaries of the various sergeants, however, range from a low of approximately $43,000 to a high of approximately $49,000. These differences in pay are attributable to a variety of factors including the Sheriff's "discretion." Employees who are promoted from one rank to another are never paid less than what they were earning just prior to their promotion. Thus, some deputies, who were already making more than some of the sergeants, have been promoted to the rank of sergeant with the result that, even though obviously they have been a sergeant for much less time than other sergeants, they are making more money than their more-senior cohorts. There was proof in the record that the Sheriff, in the exercise of his discretion, gave one newly-promoted sergeant a raise of approximately $1,900 even though that sergeant was already making well above the average pay for sergeants.

For example, it would cost Hamilton County $74,596.56 above what is currently budgeted for total sergeants' pay if equalization were to be achieved by bringing all sergeants up to the salary of the highest-paid sergeant. Gorman testified "it's an issue of cost. . . . [T]here's not enough money to go around."

The Board voted unanimously at its hearing to sustain the grievance. It later issued a written explanation, which states, in pertinent part, as follows:

> Sheriff Hammond testified that he believes that it is the Sheriff's discretion as to the amount of money given at the time of a promotion by reviewing the employee's years with the department and his/her performance and objects to fixed salaries for each position as it would not allow him the discretion to give merit increases.
>
> Sheriff Hammond as well as Director Gorman both testified that the issue of equalization has to do with funds, and if the Commission does not provide the funds, the Sheriff cannot correct any disparity. The Sheriff agreed that if the Board

upholds the grievance that he would go before the County Commission on behalf of the Board and ask for the monies but it would require the support of the attorneys as well as the employees.

The Board found that there is a disparity in the salaries of the Sheriff's Sergeants created by Sheriff Hammond when he promoted the Sergeants and arbitrarily gave the salary increases. Therefore, it is hereby agreed by the Board to uphold the grievance of the Sheriff's Sergeants to equalize their pay and if all Sergeants do the same job that they should be paid the same if there is not written criteria to establish standards.

The Sheriff filed a timely petition for writ of certiorari seeking judicial review of the decision of the Board. The petition alleges that "the actions of the Board in upholding the grievance exceed the statutory authority of the agency . . . and were unsupported by . . . evidence which is substantial and material in light of the entire record." The trial court granted the writ. The parties agreed to submit the case for decision upon the record made before the Board and their briefs. As to the materiality of the evidence, the court stated:

The court has not made a detailed examination of the transcript of the record presented to the Board. The [Sheriff] did not object to the Board's decision as being unsupported by substantial and material evidence. *Thus, the court deems the record to contain substantial and material evidence for the Board's decision.*

(Emphasis added.) Despite finding substantial and material evidence of a disparity in pay, the trial court ordered that

[t]he decision of the . . . Board, issued on January 31, 2011, requiring [the Sheriff] to equalize the salaries or wages of all sergeants employed by the [Sheriff] is set aside and declared null and void because the Board's decision is in violation of statutory provisions and in excess of the statutory authority of the Board.

The Sergeants appeal.

II.

The Sergeants raise two issues which we have restated:

> Whether the Sheriff waived any issue as to the Board's authority by agreeing at the Board hearing that the issue was properly before the Board.

> Whether the trial court erred in finding that the Board was without authority to order equal pay for all sergeants.

III.

It is for this court to determine whether the substantive issue of the Board's authority was waived. The issue of the reach of the Board's authority requires us to interpret the statute from which the Board derives its authority. In *Tidwell v. City of Memphis*, 193 S.W.3d 555 (Tenn. 2006), the Supreme Court examined the standard of review in cases such as the one now before us:

> Therefore, the standard of review is de novo without any presumption of correctness given to the legal conclusions of the courts below. In interpreting statutes, the duty of this Court is to ascertain and give effect to the intent and purpose of the legislature without unduly restricting or expanding a statute's coverage beyond its intended scope. We determine the legislature's intent from the natural and ordinary meaning of the statutory language within the context of the entire statute.

*Id*. at 559 (citations omitted).

IV.

The Sergeants argue that the Sheriff "affirmatively waived the issue [of the Board's authority] during the proceeding before the Board" by stating to the Board (1) that "this grievance is properly before the Board" and (2) that "the issues of jurisdiction were resolved." The Sheriff does not dispute making these statements, but argues that "what the [Sheriff] recognized at the [Board's] . . . hearing was the fact the [S]ergeants had a right to present their grievance to the Board. A recognition of this right . . . is in no way an admission of the Board's authority to eventually rule in excess of its power." The Sheriff points out, also, that he specifically raised the issue of the Board's authority in his petition

-4-

filed in trial court. He argues that the one case the Sergeants rely upon for the proposition of waiver, *i.e.*, ***Cupp v. Kimsey***, No. 03A01-9810-CH-00320, 1999 WL 1076939 (Tenn. Ct. App. E.S., filed Nov. 30, 1999), is distinguishable because that case involves the failure to raise the issue before the trial court rather than a failure to raise it at the administrative level. *See id.* at *3. The Sergeants assert in their reply brief that the issue waived in ***Cupp*** was whether the same identical Board that acted in the present case acted outside the scope of its authority. They assert that ***Cupp*** establishes that the issue of the Board's authority is waivable; therefore, according to the Sergeants, it was waived in the present case.

We do not find the arguments of either party on this issue to be compelling. The Sheriff seems to want the best of all worlds by conceding the authority of the Board to deny the grievance but not the authority to grant the grievance and to order relief. On the other hand, our Supreme Court has stated that "the fact that an agency has exceeded its authority may not be apparent until the agency has issued its final order." ***Richardson v. Tennessee Board of Dentistry***, 913 S.W.2d 446, 457 (Tenn. 1995). This case appears to be a good illustration of the High Court's observation. Administrative agencies such as the Board are not particularly well suited to determine the boundaries of their own authority. *See id*. The courts are vested with the ultimate say as to whether the Board acted "[i]n excess of the statutory authority" that it was granted by the legislature. Tenn. Code Ann. § 4-5-322(h)(2) (2011).

The trial court likened the issue of waiver to that of subject matter jurisdiction; the latter cannot be waived or bestowed by estoppel or the like. The trial court relied upon this Court's holding in ***Faust v. Metropolitan Gov't***, 206 S.W.3d 475 (Tenn. Ct. App. 2006) to the effect that the civilian employees of a police department could not have gained vested rights, or rights by estoppel, from an erroneous interpretation of an administrative agency that purported to give that agency authority over the civilian employees where none existed. *Id*. at 493. In ***Faust***, we stated that "[n]o administrative agency can exercise control over matters which the legislature has not seen fit to delegate to it and actions beyond the authority of the agency can have no force or effect." *Id*. at 498. Even though we agree with the Sergeants that our finding of waiver in ***Cupp*** teaches that the analogy between the Board's authority and subject matter jurisdiction is not absolute, we do not agree that the failure to raise the issue at the Board's hearing prevents us from reaching the merits of that issue. In ***County of Shelby v. Tompkins***, 241 S.W.3d 500, 504 (Tenn. Ct. App. 2007), we reached the merits of an issue regarding an objection to our jurisdiction because of a lack of the written decision of an administrative tribunal. Our reasoning, as quoted in pertinent part, seems equally applicable to the present case:

> Importantly, the disputed issue under review is a narrow one of
> pure law, and there are no disputed material facts. Neither party

disputes what the . . . Board decided or why it did so, and the chancellor considered these factors in reviewing the case.

*Id*.  We hold that the Sheriff preserved the issue of whether the Board acted outside its authority by raising the issue in the trial court.

We turn now to the substantive issue of whether the Board acted outside its authority in ordering the Sheriff to pay all sergeants the same salary.  The Sheriff simply argues that the Board's authority is defined by Tenn. Code Ann. § 8-8-409 (2011) and that it acted outside that authority in setting the pay for all sergeants in the Sheriff's Office.  The Sergeants argue that even though the statute does not explicitly grant the Board the authority to set pay scales, it does explicitly grant the Board the authority to "hear and determine appeals and complaints" which, according to the Sergeants, carries with it the implicit authority to fashion remedies with regard to those appeals and complaints, even if that remedy impacts the pay scale.

It will be helpful to have an overview of the legislation at issue.  The County Sheriff's Civil Law of 1974 is codified at Tenn. Code Ann. §§ 8-8-401 through 8-8-419 (2011)("the Act").  Counties may opt into the coverage of the Act by a two-thirds vote of the county legislative body.  *Id*. at § 402(a).  It is undisputed that Hamilton County opted in.  The Act applies to "all positions and employees in the sheriff's department," with very limited exceptions that are not applicable in this case.  *Id*. at § 403.  The Board was created pursuant to §§ 404 through 408 of the Act, which deal generally with the terms and qualifications of board members.  The "Powers and duties" of a civil service board, and hence the Board in the present case, are defined by § 409 as follows:

The board as a body shall:

(1) Adopt and amend rules and regulations for the administration of this part;

(2) Make investigations concerning the enforcement and effect of this part and require observance of the rules and regulations made thereunder;

(3) Hear and determine appeals and complaints respecting the administration of this part;

-6-

(4) Establish and maintain a roster of all employees of the classified service and the office of the sheriff showing their position, rank, compensation and place of residence;

(5) Ascertain and record the duties and responsibilities pertaining to all positions in the classified service and classify such positions in the manner hereinafter provided;

(6) Except as otherwise provided in this part, formulate and hold competitive tests to determine the qualifications of persons who seek employment in any position, and as a result of such tests, establish employment lists of eligibles for the various positions;

(7) Establish records of performance and a system of service ratings to be used to determine promotions, the order of layoffs and reemployment and for other purposes;

(8) Keep any other such records as may be necessary for the proper administration of this part; and

(9) Determine all fringe benefits to employees coming under the provisions of this part.

*Id*. The civil service board is charged with classifying all jobs within a given sheriff's department and determining the requirements and qualifications for those jobs. *Id*. at § 411. The civil service board must administer competitive eligibility tests, and advise the sheriff of the persons eligible for appointment to any openings. *Id*. at §§ 410, 414.

We note that the Sergeants repeatedly make mention of the "Manual" of civil service rules and regulations promulgated by the Board, and even include a copy of the Manual as an attachment to their brief. However, we denied a joint motion of the parties to supplement the record with the Manual because it was not part of the record before the trial court. Accordingly, we will make our decision without reference to the Manual.

We are not writing on a blank slate. In *Wayne County v. Tennessee Solid Waste Disposal Control Board*, 756 S.W.2d 274, 277 (Tenn. Ct. App. 1988), this court held that the Tennessee Solid Waste Disposal Control Board's broad grant of authority over landfills did not give it the implied authority to grant remedial relief to neighboring landowners who were injured by improperly-operated landfills. Neighbors of the landfill complained to the Solid Waste Board that the county landfill was contaminating their water. After a hearing,

the Board determined that the landfill was indeed contaminating the ground water and ordered it closed as a nuisance. *Id*. at 278. The Solid Waste Board then went further and ordered the county, the operator of the landfill, to provide the landowners with "a safe, uncontaminated drinking water supply." *Id*. The county appealed the Solid Waste Board's decision to the chancery court. The chancery court affirmed the Solid Waste Board's factual findings as well as its order that the landfill be closed, but held that it acted beyond its authority in ordering the county to supply water to the landowners "whose water is contaminated as a result of violations" of the standards within the Solid Waste Board's oversight. *Id*. at 279. We affirmed the chancery court in all respects. *Id*. at 284. The following is our discussion regarding the Solid Waste Board's authority to order the county to provide the landowners with a supply of water:

> Administrative agencies derive their authority from the General Assembly. Thus, their power must be based expressly upon a statutory grant of authority or must arise therefrom by necessary implication. *Tennessee Pub. Serv. Comm'n v. Southern Ry.*, 554 S.W.2d 612, 613 (Tenn. 1977); *General Portland, Inc. v. Chattanooga-Hamilton County Air Pollution Control Bd.*, 560 S.W.2d 910, 913 (Tenn. Ct. App. 1976). Even though statutes like the Act should be construed liberally because they are remedial, *Big Fork Mining Co. v. Tennessee Water Quality Control Bd.*, 620 S.W.2d 515, 519-20 (Tenn. Ct. App. 1981), the authority they vest in an administrative agency must have its source in the language of the statutes themselves. *Williams v. American Plan Corp.*, 216 Tenn. 435, 443, 392 S.W.2d 920, 924 (1965); *Madison Loan & Thrift Co. v. Neff*, 648 S.W.2d 655, 657 (Tenn. Ct. App. 1982).
>
> The courts should give the language of a statute its natural and ordinary meaning in light of the substance of the entire statute. *Oliver v. King*, 612 S.W.2d 152, 153 (Tenn. 1981). Statutes forming a single statutory scheme should be construed together to make the system consistent in all its parts and uniform in its operation. *Westinghouse Electric Corp. v. King*, 678 S.W.2d 19, 23 (Tenn. 1984), *app. dismissed*, 470 U.S. 1075, 105 S.Ct. 1830, 85 L.Ed.2d 131 (1985); *Pritchard v. Carter County Motor Co.*, 197 Tenn. 222, 224, 270 S.W.2d 642, 643 (1954); *Bodin Apparel, Inc. v. Lowe*, 614 S.W.2d 571, 573 (Tenn. Ct. App. 1980).

The [Solid Waste] Act was passed in 1969 to "protect the public health, safety and welfare, prevent the spread of disease and creation of nuisances, conserve our natural resources, enhance the beauty and quality of our environment and provide a coordinated statewide solid waste disposal program." Tenn. Code Ann. § 68-31-102 (1987). As part of this program, Tenn. Code Ann. § 68-31-104(3) (1987) provides that it is unlawful to "[c]onstruct, alter, or operate a solid waste processing or disposal facility or site in violation of the rules, regulations, or orders of the commissioner or in such a manner as to create a public nuisance."

The authority for implementing the Act and for enforcing its provisions rests with the Commissioner of Health and Environment ("Commissioner") and the [Solid Waste] Board. . . . [T]he Commissioner presently has the authority to investigate and supervise the construction, alteration, and operation of solid waste disposal facilities and sites. Tenn. Code Ann. §§ 68-31-105(a) & 107(a) (1987). The [Solid Waste] Board has the authority to promulgate and enforce regulations pertaining to the same activities. Tenn. Code Ann. §§ 68-31-105(c), 107, § 111(d) & (f) (1987). The [Solid Waste] Board's enforcement power is independent from the Commissioner's, and in some circumstances not applicable to this case, the [Solid Waste] Board has the authority to review and modify the Commissioner's enforcement actions. Tenn. Code Ann. §§ 68-31-111(f) & 113(a)-(f).

In its original form, the [Solid Waste] Act's enforcement mechanisms could be triggered only by the Commissioner or the [Solid Waste] Board. In 1980, Tenn. Code Ann. § 68-31-113(h) was enacted, enabling private parties to file complaints with the Commissioner regarding violations of the Act. This amendment also provided for an appeal to the [Solid Waste] Board if either party was dissatisfied with the Commissioner's response to the complaint. While Tenn. Code Ann. § 68-31-113(h) does not specifically describe the enforcement remedies available to the [Solid Waste] Board when private parties file complaints, it is reasonable to infer that the Board's remedial authority is at least as broad as the Commissioner's.

The [Solid Waste] Act gives the Commissioner six enforcement options, all intended to abate or avoid injuries to the public that could be caused by violations of the Act. The Commissioner may: (1) revoke or deny applications for registration under Tenn. Code Ann. § 68-31-106(d) (1987); (2) disapprove applications for loans or grants under Tenn. Code Ann. § 68-31-109 (1987); (3) issue orders of correction in accordance with Tenn. Code Ann. § 68-31-112 (1987); (4) refer the case for criminal prosecution under Tenn. Code Ann. § 68-31-114 (1987); (5) institute proceedings seeking injunctive relief pursuant to Tenn. Code Ann. § 68-31-115 (1987); and assess civil penalties under Tenn. Code Ann. § 68-31-117 (1987).

In addition to the Commissioner's powers, the [Solid Waste] Board has the authority to review any order of correction issued by the Commissioner and, when doing so, to "make findings and enter such orders as in its opinion will best further the purposes of this [Act]." Tenn. Code Ann. § 68-31-113(f) (1987). The [Solid Waste] Board also has the authority, pursuant to Tenn. Code Ann. § 68-31-113(h), to review the Commissioner's response to private complaints. In these situations, the [Solid Waste] Board's authority extends to the six enforcement options available to the Commissioner.

The [Solid Waste] Act's remedies are designed to protect the public health and to conserve and enhance the environment. When violations occur, the Act gives the regulators broad authority to stop the violation and to order steps to remedy or mitigate its effects. The Act does not explicitly provide a private right of action for persons who have been damaged as a result of a violation. Nor does it explicitly empower the Commissioner or the [Solid Waste] Board to grant or seek legal or equitable relief on behalf of those who have been damaged.

The [Solid Waste] Board claims that it has the authority to fashion remedies for essentially private wrongs even though the Act does not give it explicit authority to do so. Asserting that the authority is implicit in its authority to abate public nuisances and to issue orders of correction, the Board argues that its

-10-

interpretation of the [Solid Waste] Act is reasonable and consistent with the Act's purposes.

Notwithstanding the logic and appeal of the [Solid Waste] Board's position, it provides an insufficient basis for this Court to engraft remedies onto the [Solid Waste] Act that were not put there by the General Assembly. It is not our role to determine whether a party's suggested interpretation of a statute is reasonable or good public policy or whether it is consistent with the General Assembly's purpose. We must limit our consideration to whether the power exercised by the [Solid Waste] Board is authorized by the express words of the statute or by necessary implication therefrom.

We have determined that nothing in the [Solid Waste] Act expressly gives the [Solid Waste] Board or the Commissioner the authority to grant remedial relief to private parties. The Commissioner's and the Board's authority to provide relief for injuries to the general interests of the public will not be diminished by their inability to provide private remedies. Accordingly, it is neither necessary nor proper to find the power to redress private wrongs between the lines of the statutes.

*Id*. at 282-83 (footnote and headings in original omitted).

The Sergeants attempt to distinguish *Wayne County* by pointing out that the Solid Waste Board in that case granted the improper remedial relief to private parties. As we understand the distinction, the Sergeants are parties by virtue of their grievance, therefore, according to their logic, the Board had the power to grant them any and all relief that addressed their grievance. We are not persuaded by this "distinction." The affected landowners in *Wayne County* lodged a complaint with the Solid Waste Board. This Court discussed the ability of private citizens to initiate proceedings by a complaint to the Solid Waste Board or the Commissioner and how that complaint fit within the statutory scheme. In that case, as in the present case, the administrative board was creating a remedy for the perceived harm of an aggrieved party. Another reason we are not persuaded by the supposed distinction is that *Wayne County* is more important for the methodology of evaluating a supposed implied grant of authority than for the actual outcome. If a Solid Waste Board with the express authority to oversee operation of a county landfill to the point of ordering it closed does not have the implied authority to order the landfill operator to supply water to those persons affected by violations of the underlying Solid Waste Act, we do not believe

-11-

that the express authority of the Board in the present case to "hear and determine appeals and complaints" could give it the implied authority to determine the rate at which all sergeants employed by the Sheriff will be paid.

Our interpretation of **Wayne County** is consistent with other cases finding that administrative authority to act does not extend beyond the powers expressly granted by the legislature. For example, in **Crawley v. Hamilton County**, 193 S.W.3d 453 (Tenn. 2006), the High Court held that although Tenn. Code Ann. § 8-8-409, without question, gave a county the power to determine the "fringe benefits" it provided to its employees, it did not give the county authority to deprive its injured employees of a possible governmental tort liability claim through the guise of an added, but highly limited, fringe benefit. **Id**. at 455, 457. In **Town of Rogersville v. Mid Hawkins County Utility District**, 122 S.W.3d 137, 139 (Tenn. Ct. App. 2003), we held that the statute setting forth the factors to be considered in determining whether to create a new utility district did not authorize a county executive to modify an existing utility district based on a consideration of those statutory factors. *See also* **Faust**, 206 S.W.3d at 498 ("No administrative agency can exercise control over matters which the legislature has not seen fit to delegate to it and actions beyond the authority of the agency can have no force or effect.").

The trial court in the present case relied upon **Wayne County** when it held that the Board did not have the authority to order the Sheriff to equalize pay for all individuals in a certain classification, *i.e.*, sergeants. We agree wholeheartedly with the trial court that the Board has no more authority to correct a disparity by ordering every employee paid the top possible wage any more than it has the authority to correct the disparity by ordering everyone paid at the rate paid the lowest paid sergeant or some other arbitrary figure.

We need not look any further than the **Wayne County** case to see that the Board can hear grievances, and sustain grievances, and order corrective action so long as it acts within the scope of its authority. We reiterate that in **Wayne County**, we affirmed the finding of violations and the order to close the landfill. The trial court in the present case, and, thus, this Court, both have the authority to modify the Board's decision or "remand the case for further proceedings." Tenn. Code Ann. § 4-5-322(h)(2011).

The trial court observed, in its "Memorandum Opinion and Order," that the Sheriff "did not object to the Board's decision as being unsupported by substantial and material evidence." Accordingly, the court stated that it "deems the record to contain substantial and material evidence for the Board's decision." We agree. We also agree with the trial court's legal conclusion "that the Board does not have the legal power to make equal the pay for each and every sergeant by the [Sheriff]." We disagree, however, with the trial court's ultimate decision to declare the decision of the Board "null and void." We believe a different

approach is the appropriate one. Accordingly, we modify the trial court's ultimate decision of "null and void" by striking it from the court's judgment and we remand this matter to the Board so it can direct the Sheriff in writing to take the necessary steps to eliminate the disparity in sergeant pay. It is for the Sheriff to determine how this goal is to be achieved, but – the grievance in this case having been sustained – the goal must be achieved.

V.

The Sergeants argue in their reply brief that the Sheriff's brief was filed late without permission of this Court and should be stricken. They rely on Tenn. R. App. P. 29(c) which provides, in pertinent part:

> If an appellee fails to file a brief within the time provided by this rule or within the time as extended, any appellant may file a motion in the appellate court to have the case submitted for decision on the record and appellant's brief.

A Rule 29(c) motion can be responded to by the appellee "within 14 days after filing of the motion." *Id*. By raising the issue in their reply brief, rather than by motion, the Sergeants avoided giving the Sheriff an opportunity to respond. More importantly, the Sergeants provide no explanation of whether or how the late filing harmed them. Furthermore, after filing their reply brief on November 23, 2011, the Sergeants agreed "to waive oral argument with regard to this appeal . . . and to submit the matter for determination on the briefs previously filed with the Court." Accordingly, to the extent the Sergeants intend to stand on their request that the Sheriff's brief be stricken, that request is denied.

VI.

The judgment of the trial court is modified. Costs on appeal and at the trial level are taxed to the appellee, Jim Hammond, Sheriff of Hamilton County. This case is remanded to the Hamilton County Sheriff's Office Civil Service Board with instructions as set forth in this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE